**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MARIA VOLODINA CHESHIRE,

               Plaintiff,

vs.                                       Case No. 3:05-cv-00453-TJC-MCR

WALTER MAXWELL CHESHIRE,

               Defendant.

_____

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

      Pro-se plaintiff, Maria Cheshire, a Russian immigrant living in the United States under permanent resident status, filed her complaint against defendant, Walter Cheshire, her ex-husband and a U.S. citizen, under § 213A of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1183a, seeking to enforce two affidavits of support, Form I-134 and Form I-864, signed by defendant on plaintiff's behalf.  (Doc. 1.)  By the Order denying all pending motions and setting case for final hearing (Doc. 53), the Court determined it has subject matter jurisdiction over this action, predicated upon 8 U.S.C. § 1183a and 28 U.S.C. § 1331.

_____

     [1]    Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the matter addressed herein and is not intended for official publication or to serve as precedent.

At the March 24, 2006 final hearing, all parties were present, and the Court heard testimony from witnesses for both sides.  (See Doc. 56.)  In addition to defendant testifying on his own behalf, witnesses Norman Richard Storch and Earl Monroe Frazer testified for defendant at the hearing.  Plaintiff was the sole witness testifying on her behalf.  After careful consideration of the record and relevant law, this case is ready for decision pursuant to Rule 52(a), Federal Rules of Civil Procedure.

## I.    **Findings of Fact**

The facts are derived from the hearing testimony, the parties' filed papers, and the exhibits admitted during the final hearing.  In 1997, plaintiff was living in Buenos Aires, Argentina when she first met the defendant.  The couple had been communicating with each other prior to this meeting and defendant testified that he went to meet plaintiff in Argentina with the intention of getting married; the two were married there in June 1997.  Upon his first attempt to obtain an exit visa for plaintiff to leave Argentina and return with defendant to the United States, defendant had to sign an affidavit of support..  This affidavit of support, Form I-134, was executed by defendant on August 18, 1997.  However, U.S. immigration authorities denied plaintiff admission to the United States at that time.  Subsequently, defendant returned to the United States alone, leaving plaintiff, his new wife, in Buenos Aires.

On January 9, 1998, defendant made a second attempt to have plaintiff admitted to the United States.  At that time, defendant filled out a packet of immigration paperwork on plaintiff's behalf and executed another affidavit of support, this time on Form I-864.  Shortly thereafter, in mid-January 1998, plaintiff was admitted to the United States.  On January 25, 1998, plaintiff was issued a permanent resident card by the United States Immigration and Naturalization Service (INS).

Although evidence is conflicting as to the dynamics of the relationship between the parties after the time plaintiff was admitted to the United States, the parties were divorced in 2001.  On September 28, 2001, the Circuit Court, Third Judicial Circuit, in and for Suwannee County, Florida issued a Partial Final Judgment of Dissolution of Marriage dissolving the parties' marriage, but reserving all other issues for a final hearing.  The Florida court issued a Supplemental Final Judgment of Dissolution of Marriage on December 20, 2001, making a final determination on support issues between the parties; the court did not award alimony or support to either party, and the state judge did not address the issue of any obligation under the affidavits of support at issue here.

**II.** **Conclusions of Law**

A. INA Background

Generally, aliens applying for admission to the United States must present

certain documents, such as a valid unexpired immigrant visa and an unexpired passport, in order to enter the country.  8 U.S.C. § 1181(a).  However, certain classes of aliens are ineligible to receive visas, to gain admission to the United States, or to seek adjustment of immigrant status.  8 U.S.C. § 1182(a).  These classes include, but are not limited to, aliens with specific health-related problems (8 U.S.C. § 1182(a)(1)), aliens with certain criminal backgrounds (8 U.S.C. § 1182(a)(2)), aliens that pose distinct security concerns (8 U.S.C. § 1182(a)(3)), and aliens likely to become public charges (8 U.S.C. § 1182(a)(4)).  In determining whether an alien is inadmissible as a public charge, the consular officer or the U.S. Attorney General will consider, at a minimum, the alien's age; health; family status; assets, resources, and financial status; and education and skills.  8 U.S.C. § 1183(a)(4)(B)(I).  In addition to these factors, the officer or Attorney General may also consider any affidavit of support executed on the alien's behalf.  8 U.S.C. § 1182(a)(4)(B)(ii).  For family-sponsored immigrants, as opposed to employment-based immigrants, an immigrant seeking admission or adjustment of immigrant status will be inadmissible unless the alien "has obtained status as a spouse . . . of a United States citizen" or status under another acceptable classification, and "the person petitioning for the alien's admission . . . has executed an affidavit of support described in section 1183a . . . ."  8 U.S.C. § 1182(a)(4)(c).

4

B.    Form I-134

In the past, INS used Form I-134 as the statutory affidavit of support necessary to overcome the public charge ground of inadmissability for a sponsored immigrant.  Charles Wheeler, The Affidavit of Support and Sponsorship Requirement, 98-06 Immigr. Briefings 1 (1998).  However, Form I-134 was typically submitted at the discretion of the visa applicant.  Id.  Form I-134 "provided some limited assurance that a third party was willing to assist the visa applicant so that he or she would not become a public charge," and provided for support of the sponsored immigrant for only three years.  Id.   However, federal courts have consistently found that Form I-134 is not a legally enforceable contract against a sponsor by a sponsored immigrant.  See, e.g., Tornheim v. Kohn, No. 00 CV 5084(SJ), 2002 WL 482534, at *1, *5 (E.D.N.Y. Mar. 26, 2002) (finding that because defendant signed the affidavit of support on Form I-134, instead of on Form I-864, defendant had not signed a legally binding contract); Stump v. Stump, No. 1:04-CV-253-TS, 2005 WL 1290658, at *1, *4 (N.D. Ind. May 27, 2005) (finding Form I-134 to be "a nonenforceable promise by the sponsor to support the alien").  In the case before the Court, though defendant executed Form I-134 on the plaintiff's behalf, it is not a binding contract between the parties; thus, plaintiff, the sponsored immigrant, cannot enforce its terms.  Nevertheless, defendant also executed a second affidavit of support on Form I-864.

C.    Form I-864

Regulations provide that Form I-864 applies to applications for visas or adjustments of immigrant status filed on or after December 19, 1997.  8 C.F.R. § 213a.2(a)(2)(I).  Despite the fact that defendant's signature appears on the Form I-864, defendant testified that he did not "have any recollection" of signing this form.  However, after reviewing the signed Form I-864 at the hearing, defendant acknowledged that it was his signature, dated January 9, 1998, appearing on that form and that he had sent in a packet of documents to the authorities about that time to try to get a visa for plaintiff.

The language of Section 1183a prescribes the statutory requirements of the Form I-864 affidavit of support.  See 8 U.S.C. § 1183a.  Under the statute, an affidavit of support filed on behalf of an immigrant to establish that an immigrant is not excludable as a public charge is enforceable as a contract.  8 U.S.C. § 1183a(a)(1).  Section 1183a(a)(1), provides that:

No affidavit of support may be accepted by the Attorney General or by any consular officer to establish that an alien is not excludable as a public charge under section 1182(a)(4) of this title unless such affidavit is executed by a sponsor of the alien as a contract:

(A) in which the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is

6

> not less than 125 percent of the Federal poverty line during
>
> the period in which the affidavit is enforceable;
>
> (B) that is <u>legally enforceable against the sponsor by the</u>
>
> <u>sponsored alien</u>, the Federal Government, any State . . . or
>
> by any other entity that provides any means-tested public
>
> benefit . . . ; and
>
> (C) in which the sponsor agrees to submit to the jurisdiction
>
> of any Federal or State court for the purpose of actions
>
> brought under subsection (b)(2) of this section.

8 U.S.C. § 1183a(a)(1) (emphasis added).

In addition to the statutory language, the express terms of Form I-864 provide that by signing the form, defendant obligated himself "to provide the sponsored immigrant(s) whatever support is necessary to maintain the sponsored immigrant(s) at an income that is at least 125 percent of the Federal poverty guidelines." (Doc. 1 at 7, Affidavit of Support Form I-864 at 4.)  By executing Form I-864, defendant agreed to its terms, "acknowledg[ing] that section 213A(a)(1)(B) of the [INA] grants the sponsored immigrant(s) . . . standing to sue me for failing to meet my obligations under this affidavit of support." (Doc. 1 at 9, Affidavit of Support Form I-864 at 6.)  Defendant "agree[d] to submit to the personal jurisdiction of any court of the United States or of any State, territory, or

7

possession of the United States if the court has subject matter jurisdiction of a civil lawsuit to enforce this affidavit of support." (Id.)  Thus, the very terms of Form I-864 bind defendant to provide plaintiff with the requisite amount of support.

Further, federal courts in other jurisdictions have consistently found that Form I-864 constitutes a legally binding and enforceable contract between a sponsored immigrant and the sponsor executing the form. See Schwartz v. Schwartz, No. CIV-04-770-M, 2005 WL 1242171, at *1,*2 (W.D. Okla. May 10, 2005) (finding affidavit of support Form I-864 signed by ex-husband sponsor on ex-wife sponsored immigrant's behalf a valid and enforceable contract);  Stump, 2005 WL 1290658, at *1, *10, *11 (finding Form I-864 a binding contract and enforcing its terms, where form was executed by husband sponsor on wife sponsored immigrant's behalf, even where divorce was pending between husband and wife); Ainsworth v. Ainsworth, No. 02-1137-A, 2004 U.S. Dist. LEXIS 28961, at *1, *7-8 (M.D. La. May 27, 2004) (finding affidavit of support Form I-864 an enforceable contract between ex-wife sponsored immigrant and ex-husband sponsor).  Both by law and by its terms, Form I-864, signed by defendant, is a valid contract.

D.    Enforceability of Form I-864

Defendant asserts that even if the Court finds Form I-864 to be a valid contract between the parties, the contract was entered into under fraud or duress,

8

it is unconscionable, lacks consideration, and plaintiff breached the contract. Where a sponsored immigrant "never intended to enter into a lasting marital relationship, but was merely using the sponsor to gain immigrant status," it could be argued that the marriage was the result of fraudulent inducement on the part of the sponsored immigrant; however, the sponsor has the burden of proving that the immigrant committed such fraud.  Charles Wheeler, <u>Alien vs. Sponsor: Legal Enforceability of the Affidavit of Support,</u> 10-23 Bender's Immigr. Bull. 3 (2005).

After a careful review of the evidence, the Court rejects defendant's argument that he was fraudulently induced into signing Form I-864.  The Court finds a lack of evidence adequate to prove that plaintiff defrauded defendant into signing Form I-864 with a promise of marriage that she had no intention of maintaining.  While the marriage was beset by problems early on, there is insufficient evidence that plaintiff, from the beginning, had no intention to remain married once she came to the United States.

Similarly, the Court fails to find evidence that the affidavit of support Form I-864 was an unconscionable or illusory contract, that plaintiff breached the contract, or that there was a lack of consideration.  Under the terms of the affidavit, the consideration for defendant's promise to support plaintiff was plaintiff being granted entry into the United States.  By signing Form I-864, defendant agreed to "submit this affidavit of support in consideration of the sponsored immigrant(s) not

being found inadmissible to the United States . . . and to enable the sponsored immigrant to overcome [the public charge] ground of inadmissibility."  (Doc. 1 at 7, Affidavit of Support Form I-864 at 4.)  As such, the Court finds insufficient evidence to support any of the asserted defenses against the validity of the Form I-864 that defendant signed.

      E.     <u>Effect of Parties' Divorce on Support Obligation</u>

Pursuant to the INA and the terms of Form I-864, a sponsor's support obligations to the sponsored immigrant under an affidavit of support terminate only upon the occurrence of one of five circumstances: 1) the sponsor's death, 2) the sponsored immigrant's death, 3) the sponsored immigrant becoming a U.S. citizen, 4) the sponsored immigrant permanently departing the U.S., or 5) the sponsored immigrant being credited with a total of 40 qualifying quarters of work. 8 U.S.C. § 1183a(a)(2), (3); 8 C.F.R. § 213a.2(e); Doc. 1 at 7, Affidavit of Support Form I-864 at 4.  "A qualifying quarter is a unit of wages in covered employment," under the Social Security Act.  Wheeler, <u>The Affidavit</u>, <u>supra</u>, at 20.  The majority of sponsored immigrants will have to work ten years to meet the 40 quarters requirement, as a maximum of four quarters can be earned in a year.  <u>Id.</u> However, sponsored immigrants can be credited with quarters earned by the immigrant's spouse during the marriage, but only if the alien remains married to that spouse, which is inapplicable in this case where the parties are divorced.  8

U.S.C. § 1183a(a)(3)(B)(ii).  Neither the statute nor any regulations require that the

sponsored immigrant "notify the sponsor when any of the [five] conditions has

been satisfied."  Wheeler, The Affidavit, supra, at 21.  Thus, it is likely difficult for a

sponsor to know when his obligations under the affidavit of support end.  Id.

Because financial obligations under the affidavit of support terminate only

upon the occurrence of one of the five circumstances above, divorce will not

invalidate the contract created by the affidavit of support.  Id.  As such, a spouse

sponsoring an immigrant spouse can be liable under the affidavit of support even

after divorce.  Id.  Indeed, instructions accompanying the affidavit of support Form

I-864 provide that "[d]ivorce does not terminate the obligation" of a sponsor to

support the sponsored immigrant.  (Doc. 1 at 10, Affidavit of Support Instructions

at 1.)  Moreover, federal courts have found that divorce between a sponsored

immigrant and a sponsor does not necessarily negate a sponsor's financial liability

under an affidavit of support.  See, e.g., Schwartz, 2005 WL 1242171, at *2

(finding that "a sponsor and a sponsored immigrant's divorce does not

automatically terminate the sponsor's obligations under the [a]ffidavit of [s]upport,"

in case where plaintiff, permanent resident alien of the U.S. and defendant's ex-

wife, brought suit against ex-husband sponsor seeking to enforce affidavit of

support); see also Stump, 2005 WL 1290658, at *10 (holding former husband,

sponsor, liable to former wife, sponsored immigrant, for financial support under

11

terms of affidavit of support where parties' divorce was pending); <u>Ainsworth</u>, 2004

U.S. Dist. LEXIS 2896, at *6 (noting that divorce did not end enforceability of

affidavit of support contract).  Thus, that the parties in this case are divorced does

not alleviate defendant's obligation to support plaintiff according to Section 1183a

and the terms of Form I-864.

    F.    <u>Remedy</u>

Based on the evidence, the Court finds that defendant in fact supported

plaintiff up through the parties' divorce in late 2001.  Thus, the evidence

establishes that defendant honored his support obligation to plaintiff from January

8, 1998, the date defendant signed the affidavit of support, until the 2001 divorce.

Defendant testified that he has not provided plaintiff any kind of support since the

divorce (he was not required to pay alimony under the divorce decree).  As such,

the Court finds that defendant is only liable to plaintiff for support after the date of

the parties' final divorce resolution on December 20, 2001.

Section 1183a and the terms of Form I-864 provide for the appropriate

"measure of damages that would put plaintiff in as good a position as she would

have been had the contract been performed."  <u>Stump</u>, 2005 WL 2757329, at * 8.

Accordingly, from December 20, 2001 forward defendant remains obligated to

provide plaintiff with support equal to 125% of the federal poverty guidelines.

Pursuant to the Federal Register, for a household size of one person, the poverty

guidelines for 2001, 2002, 2003, 2004, 2005, and 2006 are as follows:

2001:     $8,590[2]

2002:     $8,860[3]

2003:     $8,980[4]

2004:     $9,310[5]

2005:     $9,570[6]

2006:     $9,800[7]

The following figures represent 125% of the above federal poverty levels, calculated by a pro rata amount for 2001, based on the date of the parties' divorce, on December 20, 2001, and calculated for the 2006 year-to-date, April 26, 2006:

2001:     $10,737.50 - (10,737.50 x 354/365) = $323.60

---

[2]   Annual Update of the HHS Poverty Guidelines, 66 Fed. Reg. 10695 (Feb. 16, 2001).

[3]   Annual Update of the HHS Poverty Guidelines, 67 Fed. Reg. 6931, 6932 (Feb. 14, 2002).

[4]   Annual Update of the HHS Poverty Guidelines, 68 Fed. Reg. 6456, 6457 (Feb. 7, 2003).

[5]   Annual Update of the HHS Poverty Guidelines, 69 Fed. Reg. 7336 (Feb. 13, 2004).

[6]   Annual Update of the HHS Poverty Guidelines, 70 Fed. Reg. 8373,8374 (Feb. 18, 2005).

[7]   Annual Update of the HHS Poverty Guidelines, 71 Fed. Reg. 3848 (Jan. 24, 2006).

| 2002: | $11,075 |
|-------|---------|
| 2003: | $11,225 |
| 2004: | $11,637.50 |
| 2005: | $11,962.50 |
| 2006: | $12,250 x 116/365 = $3,893.15 |

Total of 125% of federal poverty level for 2001-2006 = $50,116.75

A sponsor's financial obligation under the affidavit of support should be reduced by the amount of any income or benefits the sponsored immigrant receives from other sources. Wheeler, The Affidavit, supra, at 7. Moreover, the express terms of Form I-864 provide that a "sponsored immigrant's assets may also be used in support of [a sponsor's] ability to maintain income at or above 125 percent of the poverty line *if* the assets are or will be available in the United States for the support of the sponsored immigrant(s) . . . ." (Doc. 1 at 7, Affidavit of Support Form I-864 at 4.) As such, the Court will reduce the total amount of support ($50,116.75) defendant owes plaintiff by the total amount of plaintiff's income and benefits earned since the date of the parties' divorce in 2001. Although both parties did a poor job of providing evidence of these amounts, after careful review of all the evidence, the Court finds that plaintiff has received the following income and benefits since the date of the divorce:

1.     $371 in gross wages from Florida Times-Union earned from

14

December 19, 2001 through December 28, 2001 (pay date of January 3, 2002).

(Doc. 1 at 20.)[8]

    2.    $11,088 in gross wages in 2002 based on plaintiff's calculation in her

motion for summary judgment prayer for relief.  (Doc. 43 at 4.)

    3.    $11,088 in gross wages in 2003 based on plaintiff's calculation in her

motion for summary judgment prayer for relief.  (Doc. 43 at 4.)[9]

    4.    $4,804.79 in gross wages from North Florida Chiropractic &

Rehabilitation Center in 2004.  (Plaintiff's Composite Exhibit, 2004 W-2.)

    5.    $7,835.75 in gross wages from Shivers Trading and Operating

Company in 2004.  (Plaintiff's Composite Exhibit, 2004 W-2.)

    6.    $6,608 in gross wages from Morris Publishing Group in 2004.  (Doc. 1

at 21.)[10]

The total amount of income received from these sources (items 1-6) is

---

[8]  At the final hearing, plaintiff testified that she worked for the Florida Times-Union for more than three years and that she had a part-time job at a rate of $7.  It appears that this figure of $371, as provided on a 2002 pay stub, supports plaintiff's testimony.

[9]  In plaintiff's motion for summary judgment (Doc. 43 ), plaintiff asserted that she had a job from 2001-2004 in which she calculated earnings at $11,088.00 per year.  (Id. at 4.)

[10]  Neither party has provided evidence as to any income or benefits plaintiff received in 2005 or in the 2006 year-to-date.

$41,795.54.[11]  Accordingly, plaintiffs total damages are calculated as follows:

Total of 125% of federal poverty level for relevant dates from 2001-2006 =

$50,116.75

Total adjusted for income received: $50,116.75 - $41,795.54 = $8,321.21

## III.   **Conclusion**

Based upon the above figures, defendant owes plaintiff $8,321.21 for past

support accumulated between the date of the divorce and April 26, 2006.

Judgment will be entered against defendant in that amount.  Defendant's

obligation to sponsor plaintiff will continue until such time as the obligation expires

by law.  Under the language of 8 U.S.C. § 1183a, only the happening of one of the

five outlined events will terminate defendant's obligation of support.[12]  Thus, until

one of the events transpires, defendant must continue to maintain plaintiff at 125%

of the current federal poverty level.

At the final hearing, defendant testified that at his present income level, he

does not have adequate financial resources to pay his support obligations to

---

[11]   There is limited evidence that plaintiff received food stamps during the period after the parties' divorce.  However, there is no direct evidence as to the value of the food stamps.  As such, the Court cannot determine the amount of set-off from any food stamps.

[12]   While the Court recognizes that plaintiff has worked some, there is no requirement that plaintiff continue to work or that she obtain 40 qualifying quarters to relieve defendant of his obligation.  See 8 U.S.C. § 1183a; Doc. 1 at 4-9, Form I-864.

plaintiff.  Although the Court finds some evidence of defendant's inability to pay plaintiff under this judgment, the issue of whether defendant can pay is irrelevant to the issue of defendant's liability.  The judgment is against defendant; however, it is up to plaintiff to use lawful methods to try to collect the judgment.[13]

Accordingly, it is hereby

   **ORDERED**:

   1.    The Clerk is directed to enter judgment in favor of plaintiff, Maria Cheshire, and against defendant, Walter Cheshire, in the amount of $8,321.21, nunc pro tunc to April 26, 2006.  Defendant's future obligation to support plaintiff at 125% of the then existing federal poverty guidelines shall continue until such time as the obligation expires by law.  8 U.S.C. § 1183a(a)(2), (3); 8 C.F.R. § 213a.2(e).

   2.    Defendant's Motion to Strike Plaintiff's March 27, 2006 Miscellaneous Motion (Doc. 58) is **GRANTED** because plaintiff's motion was an unauthorized post-hearing submission.  Plaintiff's Miscellaneous Motion (Doc. 57) is hereby

---

[13]    By signing the affidavit of support, defendant "acknowledge[d] that [] plaintiff may seek specific performance of [the] support obligation."  (Doc. 1 at 9, Affidavit of Support Form I-864 at 6.)  The terms of Form I-864 provide that "any money judgment against [a sponsor] based on this affidavit of support may be collected through the use of a judgment lien under 28 U.S.C. 3201, a writ of execution under 28 U.S.C. 3203, a judicial installment payment order under 28 U.S.C. 3204, garnishment under 28 U.S.C. 3205, or through the use of any corresponding remedy under State law."  (Doc. 1 at 9, Affidavit of Support Form I-864 at 6.)  A sponsor "may also be held liable for costs of collection, including attorney's fees."  (Doc. 1 at 9, Affidavit of Support Form I-864 at 6.)  Because plaintiff represented herself, there are no attorney's fees.

**STRICKEN** and removed from the files of the Court.  The Court directs the Clerk to return plaintiff's Miscellaneous Motion and attached exhibits to her.

**DONE AND ORDERED** at Jacksonville, Florida this 4th day of May, 2006, nunc pro tunc to April 26, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

m.
Copies to:

pro se plaintiff
Sandra K. Haas, Esq.

18